# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

## BRADLEY v FRYE-CHAIKEN

Docket Nos. 164900 and 164901. Argued on application for leave to appeal April 16, 2024. Decided July 26, 2024.

Eric Bradley and Jacqueline Chuang, husband and wife, filed an action in the Washtenaw Circuit Court against Linda Frye-Chaiken for breach of contract, specific performance, and promissory estoppel. Defendant agreed to sell plaintiffs a condominium that she owned in the Cayman Islands. The parties executed a contract, but before the closing on the sale of the property, defendant's mother died and defendant became reluctant to follow through with the sale. Defendant responded to plaintiffs' complaint and also raised affirmative defenses, including that the agreement to sell was obtained by coercion and/or fraud and was therefore not enforceable. Defendant also filed a counterclaim alleging that because of her mother's illness and subsequent passing, defendant had "diminished capacity" to agree to the deal. Plaintiffs moved for partial summary disposition of defendant's counterclaim, which the trial court, Timothy P. Connors, J., granted. Plaintiffs then moved for summary disposition, arguing that there was no genuine issue of material fact regarding their complaint. The trial court granted the motion, concluding that defendant had failed to establish incompetency to contract, and ordered specific performance of the contract. The Court of Appeals (SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.) affirmed the trial court's ruling. *Bradley v Frye-Chaiken*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket No. 350387). Plaintiffs moved for sanctions, arguing that there was no legal basis for the claims in defendant's counterclaim or for her affirmative defenses. Defendant hired a new attorney, Barry Powers, to represent her concerning the motion for sanctions. Powers replaced the attorneys who had responded to the complaint and filed the affirmative defenses and counterclaim on defendant's behalf. The trial court scheduled an evidentiary hearing on the reasonableness of attorney fees requested by plaintiffs, but before the hearing, defendant requested an adjournment because Powers was not available on the scheduled hearing date. Following a hearing on the motion to adjourn, the trial court agreed to postpone the evidentiary hearing on attorney fees. The night before the hearing, plaintiffs filed a brief setting forth the amount of attorney fees requested. During the evidentiary hearing, Powers requested a two-week adjournment to review and respond to plaintiffs' brief. The trial court called Powers's request "dilatory" but agreed to the adjournment. Following the hearing on attorney fees, the court awarded $16,714.27 in attorney fees to plaintiffs and ordered that defendant, Powers, and three other lawyers (who had represented defendant before she retained Powers) were jointly and severally liable for the attorney-fee judgment under MCR 1.109(E). Powers moved to

vacate the judgment, arguing that MCR 1.109(E) requires a frivolous filing and that he had not filed any frivolous documents in his representation of defendant. Powers further noted that plaintiffs were not requesting fees for the period for which he had represented defendant. The trial court denied Powers's motion, and Powers appealed in the Court of Appeals. The Court of Appeals (SAWYER, P.J., and LETICA and PATEL, JJ.) affirmed. *Bradley v Frye-Chaiken*, unpublished per curiam opinion of the Court of Appeals, issued July 14, 2022 (Docket Nos. 356193 and 356194). Defendant applied for leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 511 Mich 866 (2023).

In an opinion by Justice ZAHRA, joined by Chief Justice CLEMENT and Justices BERNSTEIN, CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

Under MCR 1.109(E), an attorney who has signed frivolous documents and the client on whose behalf the documents were submitted may be subject to sanctions imposed sua sponte by the trial court or upon the motion of a party. MCL 600.2591 provides that upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney. MCR 1.109(E)(7) and MCL 600.2591 primarily address frivolous conduct related to a frivolous civil action or defense and require a party to file a motion for sanctions against the opposing party and the party's attorney. MCR 1.109(E)(6) primarily addresses court filings and a person who has filed a frivolous document. MCR 1.109(E)(6) plainly does not provide that all attorneys who represented a party during any part of a case in which an action or defense was found frivolous must be held jointly and severally liable for any sanctions that are imposed. Rather, the court rule gives the trial court discretion to impose an appropriate sanction, including that the court may hold the attorney who signed the frivolous document and the represented party jointly responsible for sanctions. In this case, Powers did not sign the frivolous documents underlying the trial court's order of sanctions. Therefore, the trial court abused its discretion by holding him responsible for the sanctions it imposed under the court rule. MCL 600.2591 and by extension, MCR 1.109(E)(7), provide broader language that is not explicitly limited to those who sign a pleading and therefore potentially provide a broader basis for sanctions than the filing of frivolous documents. But the language of the statute is not so broad as to permit joint and several liability for sanctions against all attorneys who represented a client during any portion of the case and certainly does not require that a trial court hold attorneys jointly and severally liable for sanctions imposed in a case. Additionally, the statute contemplates that more than one frivolous defense may be presented during a civil action, and the language of the statute supports the conclusion that the statute does not require the entire defense or all asserted defenses to be found frivolous in order for sanctions to be imposed. Because the statute thus contemplates sanctions relating to a particular defense, it follows that sanctions may only be sought against the attorney who asserted that specific defense. Further, the focus of the frivolousness inquiry under the statute is centered on the claims or defenses at issue at the time they were made. This ensures that an attorney who was retained at a different stage of the proceedings and had no influence on the legal arguments presented in the frivolous documents is not liable for oversight of the arguments or restraining frivolous proceedings and costs. In this case, Powers was hired to litigate the amount of costs and fees assessed by the trial court and did not continue to litigate the pleadings that the court found frivolous and for which the court imposed sanctions. Moreover, although Powers's own conduct

might have justified the trial court's scrutiny of his representation, none of his conduct related to the filing of frivolous counterclaims or defenses for which the court had imposed sanctions. Therefore, the sanctions were not supported by MCR 1.109(E) or MCL 600.2591.

Reversed and remanded.

Justice VIVIANO, dissenting, agreed with the majority that, in general, an attorney should not be sanctioned for conduct that occurred prior to their involvement in the case. But if the attorney continues to advance arguments or positions that the court previously found to be frivolous, he believed that the trial court has discretion to hold the attorney jointly and severally liable for the sanctions, particularly when the new attorney engages in dilatory tactics that obstruct the trial court's ability to determine the amount of sanctions to be imposed for the conduct of the attorney's predecessors. Rather than adopt a categorical rule that an attorney's efforts to delay the resolution of a motion for sanctions bear no relationship to the sanctionable conduct of the attorney's predecessors, Justice VIVIANO would leave to the trial court's discretion the decision whether the new attorney's dilatory tactics were sufficiently egregious to be considered a continuation of the underlying conduct.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 26, 2024

STATE OF MICHIGAN

SUPREME COURT

ERIC BRADLEY and JACQUELINE
CHUANG,

       Plaintiffs-Appellees,

v                                    No. 164900

LINDA FRYE-CHAIKEN,

       Defendant,

and

BARRY POWERS,

       Appellant.

ERIC BRADLEY and JACQUELINE
CHUANG,

       Plaintiffs-Appellees,

v                                    No. 164901

LINDA FRYE-CHAIKEN,

       Defendant-Appellant,

and

BARRY POWERS,

       Appellant.

_____

BEFORE THE ENTIRE BENCH

Zahra, J.

In this breach of contract action arising out of the sale of real property, the trial court granted summary disposition to plaintiffs, the buyers of the property, and awarded specific performance to transfer the property to plaintiffs. The trial court also held that defendant's counterclaims and defenses were frivolous and awarded plaintiffs sanctions, representing reasonable attorney fees to contend with those defenses and counterclaims plus costs and statutory interest. The trial court imposed the sanctions against defendant and every attorney who had represented defendant from the time that her answer to the complaint was filed through the entry of the judgment awarding sanctions. The significant issue presented in this case is whether a trial court commits clear error by imposing sanctions against every attorney who represented a sanctioned party during a civil action, even when the sanctionable conduct occurred prior to an attorney being retained. We hold that the relevant court rule, MCR 1.109(E), and statute, MCL 600.2591(1), do not require that all attorneys who represent a sanctioned party during a civil action be held jointly responsible for frivolous conduct, let alone jointly and severally responsible for that conduct. We further hold that the record developed in this case, at least to this point, does not support

2

the imposition of sanctions against Barry Powers, the attorney who entered the proceedings after sanctions were ordered for the purpose of litigating the amount to be imposed.

MCR 1.109(E)(6) only permits joint responsibility for the party and the person who signed the frivolous pleading. And while MCL 600.2591(1)[1] is not explicitly dependent on the filing of a frivolous pleading, the statute requires more than an attorney entering an appearance during any portion of the pertinent case, such as an appearance made after the frivolous action or defense was dismissed on the merits, to be held jointly responsible.

It is well established that a party may assert more than one defense.[2] MCL 600.2591(1) acknowledges as much by referring to *a* civil action or defense.[3] If an attorney substitutes into a case and does not participate in a frivolous claim or defense, the sanctionable conduct does not arise out of that attorney's representation, and therefore a sanction is not permitted.

Here, Powers was hired to litigate the amount of costs and fees assessed by the trial court for sanctionable conduct that occurred prior to his appearance. Powers did not file any pleading deemed frivolous by the trial court. Likewise, he did not argue the unsubstantiated facts that formed the foundation of the trial court's sanctions order. Specifically, Powers did not argue that defendant was incompetent to enter a contract, that

---

[1] As later discussed, MCR 1.109(E)(7) provides for additional sanctions, consistently with MCL 600.2591(1).

[2] See MCR 2.111(F)(1).

[3] MCL 600.2591 provides, "Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney."

3

plaintiffs defrauded defendant, or that plaintiffs coerced defendant to sign a contract—the frivolous defenses and counterclaims at issue. While the trial court had every right to scrutinize Powers's conduct during his limited role in several hearings, no motion was filed against him alleging that his conduct was sanctionable, and the trial court gave Powers no indication that his conduct during his court appearances was, in and of itself, sanctionable.[4] Because Powers did not participate in defendant's frivolous defenses and counterclaims, and no motion for sanctions was brought against him, the court committed an error of law by holding Powers jointly and severally responsible for the sanctions it had imposed on defendant and her prior attorneys for frivolous pleadings filed earlier in the proceedings. Accordingly, we reverse the Court of Appeals decision affirming the trial court's order holding Powers jointly and severally liable for the sanction imposed and remand to the trial court for further proceedings consistent with this opinion.

---

[4] I disagree with Justice VIVIANO's conclusion that it was within the trial court's discretion to sanction Powers jointly for frivolous pleadings filed and litigated before Powers's appearance in these proceedings. The trial court may have been frustrated by Powers, but the judge clearly and unequivocally stated that he believed he was *required* to impose the sanctions on all counsel of record because, essentially, the Court of Appeals had "reversed me" the last time he "cut some slack to the attorneys" in a matter involving frivolous pleadings. There is no indication in the record that the trial court analyzed or directed its apportionment of sanctions based on the conduct of Powers *after the defense was dismissed*. Furthermore, plaintiffs only sought compensation for sanctionable conduct that occurred prior to Powers's appearance and never requested sanctions for Powers's conduct during the evidentiary hearing. The trial court misinterpreted its legal mandates under a Court of Appeals opinion, stating that the Court of Appeals had "[s]aid if there's a finding of frivolousness, I must, must—it's not even could, shall—award [sanctions] against the attorneys." While the trial court may have had a basis to impose sanctions specifically tailored for Powers's conduct, nothing in the record supports the conclusion that Powers was in fact being sanctioned for his specific representation of defendant during the hearing to establish the amount of sanctions to be imposed for the filing of frivolous pleadings by his predecessor attorneys.

## I. BASIC FACTS AND PROCEEDINGS

On October 11, 2018, husband-and-wife plaintiffs, Eric Bradley and Jacqueline Chuang (referred to collectively as "plaintiffs" and individually as "Bradley" and "Chuang"), filed an action for breach of contract, specific performance, and promissory estoppel against defendant, Linda Frye-Chaiken, relating to a written agreement for the purchase of real estate located in the Cayman Islands. Plaintiffs claimed to have satisfied every condition of the agreement and asserted that defendant failed to perform her obligations under the contract by refusing to close.

Apparently, Bradley had previously sold real estate to defendant. Defendant owned multiple properties and described herself as "land rich and cash poor." Defendant's mother became ill, and defendant wanted to provide for her care. She turned to Bradley to sell her condominium in the Cayman Islands. Defendant was ambivalent about selling the property, which she had long held. Nonetheless, the parties executed a contract for the sale of the property.

Defendant's mother passed away before the closing on the sale of the property, and defendant grew reluctant to finalize the deal. Defendant claimed she had been taken advantage of in a recent similar transaction (not involving plaintiffs). But defendant also claimed that Bradley took advantage of her both before and after her mother's death and that the deal terms kept changing.

A real estate contract signed by the parties on May 27, 2014, indicated that defendant was selling the property to plaintiffs, but a second real estate contract signed by the parties on December 28, 2015, indicated that defendant was selling the property to a limited-liability company, Crystal Blue Vacations; plaintiffs were the directors of that

5

company. Defendant claimed that Bradley assured her that Michael Scarfo, a person she had previously done business with, would guarantee that she would receive payment. From her deposition, it appears defendant believed that because Scarfo agreed to finance the sale to plaintiffs, he was to be included as a party to the contract. Ultimately, Scarfo was not a party to the contract for the sale of the condominium, though he was included in the overall deal in the final proposed closing documents as a guarantor.

Defendant, initially represented by attorneys Peter J. Winter and William Amadeo, timely filed an answer to the complaint and submitted a separate document raising 18 distinct defenses. One of these defenses alleged that "[a]ny and all agreements claimed to be enforceable were obtained or induced by coercion and/or fraud, and are, therefore, not enforceable." A month later, defendant filed an amended list of defenses, including that "the Agreement relied upon by Plaintiffs was procured through the use of undue influence when Defendant had diminished capacity." Defendant filed a counterclaim against plaintiffs the same day.

The counterclaim alleged that Bradley represented to defendant that Scarfo would be a party to the contract, though Scarfo was not mentioned in the contract. There were also allegations "[t]hat at the time of the discussions, negotiations, and execution of the Contract[,] Bradley was aware that [defendant]'s mother was ill, that [defendant] was providing support services, and that [defendant] was under severe financial and emotional distress as a result of her mother's condition." The counterclaim also alleged "[t]hat Bradley took advantage of [defendant]'s diminished capacity in the discussions, negotiation, and execution of the Contract." The counterclaim also included separate counts of "Fraud and Misrepresentation" and "Undue Influence/Diminished Capacity."

6

Plaintiffs responded to defendant's counterclaim and defendant's affirmative defenses and moved for partial summary disposition on defendant's counterclaim. The trial court granted plaintiffs' motion for partial summary disposition and dismissed Counts I through IV of defendant's counterclaim,[5] with the caveat that the order did not prevent defendant from raising her affirmative defenses, some of which overlapped with her counterclaim.

## A. SUMMARY DISPOSITION PROCEEDINGS

Plaintiffs then moved for summary disposition, arguing that there was no genuine issue of material fact and that plaintiffs were entitled to judgment as a matter of law. After entertaining the parties' arguments, the court held in favor of plaintiffs. The court found that defendant failed to establish incompetency to contract. The trial court also found the contract terms to be clear. Therefore, the trial court declared that the parties had entered a valid and enforceable contract and entered a judgment for specific performance of the contract.

## B. SANCTION PROCEEDINGS

Afterward, plaintiffs moved for sanctions, claiming, in relevant part:

> 2. The counts of Defendant's counterclaim that purported to state claims for breach of contract, fraud, and und[ue] influence/diminished capacity were frivolous as that term is defined by MCR 2.625 and MCL 600.2591 in that there was no reasonable basis for believing the facts alleged under those counts, there was no legal basis for the claims, and the primary purpose was to harass Plaintiffs.

---

[5] The trial court denied plaintiffs' motion for partial summary disposition as to Count V of defendant's counterclaim, which related to costs from an action in the Grand Court of the Cayman Islands, Civil Division, which had dismissed the case on the basis of forum non conveniens in favor of Michigan.

3. Defendant's defenses stated in her answer and subsequent court filings that she was not competent to contract, that Plaintiffs unduly influenced or coerced her into contracting with them, that Plaintiffs breached the contract, and that Plaintiffs defrauded her were frivolous as that term is defined by MCR 2.625 and MCL 600.2591 in that there was no reasonable basis for believing the facts alleged under these defense theories, there was no legal basis for the defenses, and the primary purpose was to harass Plaintiffs.

After plaintiffs filed the motion for sanctions, defendant filed a substitution of attorney on September 4, 2019, reflecting that Mathew Kerry would replace Winter and Amadeo as her attorney. The filing acknowledged that the next hearing date, which concerned the motion for sanctions, was scheduled for September 12, 2019. Kerry had already filed an appeal of the underlying final judgment on behalf of defendant on August 27, 2019.

In her response to plaintiffs' motion for sanctions, defendant took issue with plaintiffs' assertion that the trial court had to impose sanctions if it found that defendant " 'had no reasonable basis to believe she had been defrauded, suffered from breach of contract, or lacked capacity to contract with Plaintiffs . . . .' " Defendant also argued that MCL 600.2591(3)(a)(*ii*) "is addressed to the truth or falsity of facts underlying a legal theory—not the ultimate validity of the legal theory or the party's ability to marshal evidence in support." In sum, defendant argued that

> Plaintiffs do not identify any facts put forth by Defendant that were false or for which she did not have a reasonable belief in their truth. They instead rely on assertions that Defendant either failed to produce evidence in support of her legal claims or that her legal theories were inadequate.

Defendant also disputed that her claims and defenses were devoid of arguable legal merit, and she asserted that the primary purpose of her claims and defenses was to protect her

8

interest in the condominium, not to harass plaintiffs. Defendant insisted that she only intended to protect her property interest and that she felt she had been misled.

At the September 12, 2019 hearing on sanctions, the trial court entertained the parties' arguments and held for plaintiffs from the bench:

> Welcome to the case, [Kerry]. I'm not [going to] debate with you about what has transpired since you've only been in a few days. I did make a finding that there was no reasonable basis to believe the facts underlying that party's legal position were in fact true, and that because of some of the allegations, the legal position was devoid of arguable legal merit. . . . I just think that your client had second thoughts, wanted out of the deal, and I indicated a deal is a deal, and, and she should follow through [with] it.
>
> I [find] that [defendant's] position is frivolous under the statute. Your motion is granted. You do need to set up an evidentiary hearing under Smith v Khouri.[6] I'd like to see the reasonableness of the hours that were spent that you're asking for as well as the hourly rate. So go see . . . my staff and the two of you pick out a date that's mutually convenient for both of you.

The evidentiary hearing on the reasonableness of the claimed attorney fees was scheduled for November 20, 2019.[7] On November 6, 2019, defendant filed a motion to

---

[6] *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008).

[7] At this hearing, the trial court is to apply *Smith*, 481 Mich 519, in which the Court set forth factors that are the framework for calculating a reasonable attorney fee. The Court modified its decision in *Smith* in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281; 884 NW2d 257 (2016), stating that "when determining the reasonableness of attorney fees awarded under [MCL 500.3148(1)], a trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Thereafter, the trial court must consider *all* of the remaining *Wood*[ *v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982)] and MRPC 1.5(a) factors to determine whether an up or down adjustment is appropriate." (Citations omitted.)

The Court distilled these factors into the following list:

9

adjourn the evidentiary hearing, explaining that she had retained yet another lawyer, Powers, to represent her during the hearing. The motion stated that Powers could not appear on the date set for the evidentiary hearing because he was scheduled to commence a trial on that date in the Oakland Circuit Court. Defendant asked that the hearing be adjourned to a date no earlier than November 27, 2019.

Plaintiffs' response noted that the trial "court set this hearing date two months ago, at which point it was the earliest date available." Plaintiffs elaborated that the hearing

---

   (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

   (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

   (3) the amount in question and the results obtained,

   (4) the expenses incurred,

   (5) the nature and length of the professional relationship with the client,

   (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

   (7) the time limitations imposed by the client or by the circumstances, and

   (8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 281-282.]

"These factors are not exclusive, and the trial court may consider any additional relevant factors. To facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Pirgu*, 499 Mich at 282 (citation omitted).

should not be further delayed because of defendant's decision to obtain new counsel, given the time and money plaintiffs had already spent defending frivolous defenses.

On November 14, 2019, the trial court held a hearing on defendant's motion to adjourn.[8] The court reluctantly agreed to adjourn the evidentiary hearing to sometime in January 2020, but the court stated that "[t]here will be no other adjournments. I don't care how many other lawyers come in. And I'm proceeding if your client is—doesn't have a lawyer. This is really quite ridiculous." During the hearing, for reasons not entirely clear, plaintiffs' counsel suggested that Powers, as defendant's third attorney, may not be subject to liability for the sanctions imposed on defendant:

> [*Plaintiffs' Counsel*]: . . . And, yes, of course, the principal purpose of the motion for sanctions or . . . I should say my understanding of the, . . . the reason the Court granted our motion for sanctions is because of the frivolous nature of the claims and defenses, both of which were asserted by Defendant, both positive claims and defenses.
>
> And so how much risk the attorney who substituted in would be [facing,] . . . I would think that it would be minimal.
>
> *The Court*: Right.
>
> [*Plaintiffs' counsel*]: It would probably only relate to things that he, himself, filed or things that he, himself, did, and [Powers] only filed [pleadings] in response to the motion for sanctions, and although I didn't think that they were persuasive, and it turned out the Court didn't either, I don't think that they were sanctionable.

The trial court later entered an order scheduling the evidentiary hearing for January 24, 2020. The night before the hearing, plaintiffs filed a brief on attorney fees,

---

[8] The hearing was initially delayed because Powers had a problem with traffic. Plaintiffs' counsel indicated to the court that he would not object to waiting for Powers's arrival. The court agreed to wait, stating "[h]e's a new lawyer coming in. Let's at least give him that initial courtesy."

arguing that $17,680 was a reasonable baseline under *Smith v Khouri*.[9] Plaintiffs also argued that an upward adjustment was appropriate under the factors expressed in *Wood* because the attorneys' "billing in this case closely tracks the conservatively estimated *Smith* baseline of $26,745 calculated above, and the other permissible factors indicate that the reasonable value of [the attorneys'] services could even be adjusted up."

At the evidentiary hearing, Powers requested a two-week adjournment to review the filing and file a brief in response. The trial court noted that plaintiffs' counsel was not required to file a brief. Plaintiffs' counsel explained that "all this brief contains is my analysis of Smith v Khouri which I'm about to testify to . . . ." Powers responded, "Well, I don't know if he's [going to] testify as to your legal opinions as to—." The trial court interjected:

> No, no, no, listen, listen, this is silly, this is just darn silly. I have done this for years, including when I was a private lawyer. And I routinely would testify in these when I won no fault cases. He gets up, he testifies, here's the basis of the billing, here's what I'm charging for an hourly rate, here's what we do, we know the Smith v Khouri factors, and then you cross-examine on it, then we make argument, and I make a decision. Go.

> Powers responded:

> So I have the docket, I've studied the docket, and whatever papers and transcripts are available in the file. So it's my understanding that we already have . . . a determination by this Court that the, the Plaintiff is entitled to— was entitled to summary judgment. Judgment has entered on all of the affirmative claims in favor of Plaintiff and on all of the counterclaims against the Defendant, and that there was a subsequent, timely motion for sanctions that the Court also granted.

> Powers later added:

---

[9] *Smith*, 481 Mich at 530.

So the law of the case is that anything that I might suggest that would go to the merits at this point would be considered irrelevant given that it's already part of the record and it's not—I'm not here to ask the Court to reconsider anything, but I just, I just [want to] make that clear because we do have, you know, obviously a number of substantive arguments that may appear on their face to go to the, to the merits and not necessarily attorney's fees. But if the case was so frivolous on its face that, that the Court deems that the, the Plaintiff should be recompensed in some way for having to incur what should have been unnecessary expenses under our system, then I don't know how you incur 17,000 dollar legal fees . . . . So in making that argument or in making those questions to [plaintiffs' counsel], the Court might take that as only going to the merits of the case in substance but I'm really not. It just goes to the nature of the work[.]

Notably, this argument was outside the scope of the "routine" hearing the trial court had previously contemplated as limited to argument over the *Smith v Khouri* factors. Regarding Powers's request for an adjournment to respond to plaintiffs' brief on attorney fees, the trial court opined, "I think [this] is dilatory," and later commented "that this is another dilatory . . . tactic." Nonetheless, the court adjourned the evidentiary hearing for two weeks but also explained its conclusion that it was required to impose sanctions on Powers as an attorney of record for defendant:

I'm also going to give you [the] decision on [*Lima Twp v Bateson*, unpublished per curiam opinion of the Court of Appeals, issued December 19, 2019 (Docket Nos. 344007 and 345835)], and where I cut some slack to the attorneys and put [a sanction only] against the participant. We'll make copies for each of you. [The] Court of Appeals reversed me[, saying] if there's a finding of frivolousness, I must, must—it's not even could, shall— award [sanctions] against the attorneys. Your best argument is that portion which pertains to your representation, but if I find this, which I have, it's my duty under this decision.

Powers again suggested he had no intention of restricting his argument to the *Smith* factors:

13

*Mr. Powers*: Thank you, your Honor. There are two more quick points I'd like to maybe beg the Court's attention on. Again, I, I understand that I'm on thin ice since the Court's already suggest—

*The Court*: I don't think you're on thin ice. . . .

*Mr. Powers*: —suggest it was dilatory, and I can assure the Court that's not my intention, but I, but I—

*The Court*: Sir, I'm just telling you I've had these motions many, many times, and I've never had this kind of argument of—but you're free to make it, go ahead.

*Mr. Powers*: All right, one is . . . an unorthodox argument, and I'm [going to] acknowledge that at the outset given that the substance of the case is behind us. But the anomaly here is the, the so called real estate sales contract, the one that I understand has been sued upon and the one upon which judgment has been entered [and is] to be enforced, specifically, according to its terms, does say in the first paragraph, quote, "All expenses of legal expenses shall be paid for by the purchasers who—," so, so—

*The Court*: Sir, I—I'm not, I'm not—you know, you keep reopening things, you're goin[g] on all these tangents. I have made a ruling. You have chosen to come in late in the game. I'm not [going to] re-argue, re-litigate, re-explain my decisions. I have to [make] a determination. I've already determined that the proceedings on here are frivolous. I'm giving a copy of the [*Bateson*] decision because you're on the hook for your time involved as well. We'll have the—

*Mr. Powers*: No, I understand, your Honor.

*The Court*: Listen, I'm not done talkin'.

*Mr. Powers*: Pardon me.

*The Court*: Sit down. I will put a number on that, and the rationale for that number, then there will be a judgment. You will take it up. If you can get two out of three Court of Appeals' decisions to say I'm wrong, appellate judges, I'll follow that, but this is not some, you know, circus or charade.

The evidentiary hearing was held on January 28, 2020. The hearing began as a routine proceeding, except that one of plaintiffs' attorneys, James Fink, was tasked with

14

examining plaintiffs' other attorney, his law partner and son, Andrew Fink. Andrew Fink

testified about the time the law firm spent on the case that he believed "clearly related" to

the frivolous claims and defenses. He had prepared a summary that delineated the time

that he and his father had spent individually on those frivolous claims and defenses and

whether that time was clearly related to the frivolous claims and defenses. He also filed an

affidavit attesting to the document's accuracy.

Powers argued that the exhibit was offered under MRE 1006[10] as a summary and

that it could not "be admitted as a summary unless . . . the backup documentation that

substantiates it" cannot conveniently be examined in court. The trial court overruled the

objection "for purposes of this hearing," and the exhibit was admitted.[11]

Cross-examination did not go smoothly. Powers's first question was "How is it that

you came to represent your clients in this case?" A relevancy objection was immediately

sustained. The second question was "Is there a referral fee arrangement by which you have

---

[10] MRE 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

[11] Michigan courts have long held that the Rules of Evidence apply to trial proceedings before a fact-finder and not to evidentiary proceedings short of trial. See MRE 101(a); MRE 104(a); MRE 1101. These rules may provide guidance to courts presiding over evidentiary hearings, but the extent to which these rules govern evidentiary hearings is left to the sound discretion of the trial court. See MRE 103(a)(1). Accordingly, defense counsel's argument may have been more effective had he requested that plaintiffs' counsel make the originals or duplicates available for examination or copying. There is no indication, however, that any such request was made before the hearing.

15

an obligation to pay another lawyer . . . [?]" Another objection was immediately sustained for the same reason. Powers nonetheless managed to elicit testimony that plaintiffs' counsel's relationship with plaintiffs began with the instant case and that there was a written fee agreement, which was the standard practice agreement used by the Finks' firm. The proofs also established that this representation was not premised on a contingency-fee basis. But an objection was made when Powers asked Andrew Fink if plaintiffs had been billed for legal services. The trial court sustained the objection and briefly explained the *Smith* decision to Powers. Notwithstanding that the objection was sustained, Powers again probed whether plaintiffs had been billed for services. Powers further indicated a desire to elicit testimony regarding bill collection. This prompted the court to again explain the *Smith* holding. But Powers's very next question was "You did send out bills, correct[?]" Powers then attempted to relitigate the court's decision to admit the summary exhibit he had previously challenged. Specifically, Powers asked, "And those bills are the only evidence to back up this summary, correct?" The court sustained another objection, stating, "I've already ruled on it, and I've asked you, sir, to direct your questioning to the 1egal criteria upon which I need to make my analysis." Powers continued to probe into the specifics of the Finks' representation of plaintiffs in this case, rather than strictly limiting his challenge to the reasonableness of the hourly rates requested for each attorney's time or the reasonableness of the attorney hours claimed to defend the frivolous aspects of defendant's case. Eventually, the trial court became frustrated and ended the hearing, directing Powers to submit a written closing argument. Powers filed a "Memorandum of Law on Attorney's Fees" on February 4, 2020.

The record unambiguously reflects that the attorney fees requested by plaintiffs stretched from September 2018 to July 2019, when litigation concerning defendant's frivolous defenses ceased. In fact, during the evidentiary hearing on attorney fees, plaintiffs' counsel sought to lower the requested amount because some of the fees were not "clearly related to the frivolous claims and defenses." Thus, it was undisputed that the sanctions at issue were imposed solely for the defenses that were rejected by summary disposition prior to Powers representing defendant or entering an appearance in the case.

On November 16, 2020, the trial court issued a written opinion and order granting plaintiffs' request for attorney fees. The court concluded that the rates requested by plaintiffs' counsel were well within the range of fees customarily charged in the locality. The court also found that the number of hours expended in the case were likewise reasonable. The court noted that plaintiffs had to contend with a frivolous defense and had brought two successful motions for summary disposition, a successful motion to compel discovery, and a motion for sanctions under MCR 1.109. The court also noted that the *Wood* factors suggested that the reasonable value of the services provided by plaintiffs' counsel could be adjusted on the basis of the amount in controversy ($625,000.00), the complete recovery of the property sued for, and the difficulty of the legal proceedings, including contending with the frivolous defense. The court awarded plaintiffs $16,430 in sanctions against defendant and all attorneys who represented her, including Powers, pursuant to MCR 1.109(E), MCR 2.625(A)(2), and MCL 600.2591(1).

The following day, November 17, 2020, the trial court entered a judgment awarding sanctions, which provided:

17

Consistent with this Court's November 16, 2020 Opinion and Order Granting Plaintiff's [sic] Request for Attorney Fees, the judgment is entered in favor of Plaintiffs and against Defendant, her current attorney, and each attorney who has previously appeared in the case on her behalf, jointly and severally. These attorneys include

1. Barry Powers ([P]40589);

2. Matthew Kerry (P81793);

3. Peter Winter (P25339);

4. William Amadeo (P76194)[.]

This judgment includes filing fees in the amount of $175.00, motion fees in the amount of $80.00, and service fees in the amount of $29.27, as well as attorney fees in the amount of $16,430.00, for a total judgment amount of $16,714.27. This judgment will earn interest at statutory rates, computed from the filing of the complaint.

On December 7, 2020, Powers moved to vacate the November 16, 2020 opinion and order and the November 17, 2020 judgment. The motion highlighted that MCR 1.109(E) requires a frivolous filing and that Powers had only filed his appearance and a three-page memorandum of law on attorney fees, neither of which were frivolous. The motion also noted that plaintiffs had only sought sanctions for the period between September 24, 2018 (preparation of the complaint) through July 22, 2019 (review of defendant's response to the motion for summary disposition). Concerning the order of joint and several liability, defendant argued:

To the extent the Court's Opinion and Order purports to constitute a *sua sponte* adjudication as against "current counsel" and other counsel not appearing as counsel for Defendant until after such date and events, there is and can be no finding that anything such counsel did subjects them to sanctions, and any adjudication providing otherwise constitutes impermissible punitive damages against such counsel.

18

The next day, Powers filed a second motion seeking essentially the same relief as defendant's motion filed the previous day as well as a new evidentiary hearing, rehearing and reconsideration, and "other relief." The motion added that Powers should have been joined as a party and further elaborated on the argument that joint and several liability of all defendant's attorneys was improper.

On January 12, 2021, the trial court entered an order treating the separate motions as a single motion for reconsideration and denying it on the basis that "no palpable error exists and that the parties have not been misled sufficient to show that a different disposition must result." On January 28, 2021, the Court of Appeals issued an unpublished, per curiam opinion affirming the trial court's order granting summary disposition in favor of plaintiffs pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).[12]

## C. RELEVANT APPELLATE PROCEEDINGS

On February 2, 2021, defendant and Powers filed a claim of appeal as of right from the judgment awarding sanctions, and defendant separately filed a claim of appeal from the judgment. The appeals were consolidated,[13] and on July 14, 2022, the Court of Appeals issued an unpublished per curiam opinion affirming the trial court's judgment awarding sanctions.[14] The panel specifically held:

[12] *Bradley v Frye-Chaiken*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket No. 350387). Defendant applied for leave to appeal in this Court, which was denied on June 1, 2021. *Bradley v Frye-Chaiken*, 507 Mich 956 (2021).

[13] *Bradley v Frye-Chaiken*, unpublished order of the Court of Appeals, entered February 9, 2021 (Docket Nos. 356193 and 356194).

[14] *Bradley v Frye-Chaiken*, unpublished per curiam opinion of the Court of Appeals, issued July 14, 2022 (Docket Nos. 356193 and 356194).

We find that the trial court did not abuse its discretion by including Powers in the joint and several judgment for sanctions. The judgment also complied with MCR 2.602(B)(1). And the trial court did not err by including statutory interest in the attorney-fees award. We further find that the trial court did not abuse its discretion in admitting plaintiffs' exhibit 1 or limiting the scope of the cross-examination of plaintiffs' attorney at the evidentiary hearing to support the request for attorney fees.[15]

Defendant sought leave to appeal in this Court. We ordered oral argument on the application and directed the parties to file supplemental briefs in accordance with MCR 7.312(E)

addressing whether the attorney hired to litigate the amount of costs and fees assessed by the trial court was properly found to be jointly and severally responsible, under MCR 1.109(E) or MCL 600.2591(1), for the costs and fees that were incurred prior to the appellant's appearance in the case, and/or that did not arise out of his representation of the defendant. In addressing that question, the parties shall specifically address: (1) whether, under MCR 1.109(E) or MCL 600.2591(1), all attorneys who represented a client during any portion of a case in which an action or defense was frivolous must be held jointly and severally responsible for costs and fees; and (2) if not, how a court should determine which attorneys should be held liable for costs and fees.[16]

## II. ANALYSIS

### A. RELEVANT STATUTORY LAW AND COURT RULES

MCL 600.2591 provides:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

---

[15] *Id*. at 2.

[16] *Bradley v Frye-Chaiken*, 511 Mich 866, 866-867 (2023).

20

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

MCR 1.109(E) provides in relevant part:

(5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

21

(7) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCR 1.109(E)(7) references MCR 2.625(A)(2), which in turn provides that "[i]n an action filed on or after October 1, 1986, if the court finds *on motion of a party* that an action or a defense was frivolous, costs shall be awarded as provided by MCL 600.2591."[17]

## B. STANDARD OF REVIEW

"A trial court's determination that an action is frivolous is reviewed for clear error."[18] We review de novo "the proper interpretation and application of statutes and court rules[.]"[19]

## C. APPLICATION

MCR 1.109(E)(6) primarily addresses court filings and a person who has filed a frivolous document. An attorney who signs a frivolous document and the client on whose behalf the document is offered may be subject to sanctions imposed sua sponte by the trial court or upon a party's motion. MCR 1.109(E)(7)[20] and MCL 600.2591, on the other hand,

---

[17] Emphasis added.

[18] *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (opinion by SAAD, J.) (quotation marks and citation omitted).

[19] *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018).

[20] MCR 1.109(E)(7) is essentially a conduit to MCL 600.2591 in that the rule cites MCR 2.625(A)(2), which then cites the statute, which provides for the sanctions. That is, MCR 1.109(E)(7) provides for sanctions as provided in MCR 2.625(A)(2), "[i]n addition to sanctions under [MCR 1.109(E)(1) through (6)]," on the basis of a party pleading a frivolous claim or defense. MCR 1.109(E)(7) thus largely mirrors the basis for sanctions that may be asserted under MCL 600.2591. In essence, if sanctions are imposed under

22

primarily address frivolous conduct related to a frivolous civil action or defense[21] and require a party to file a motion for sanctions against the party and the attorney(s).

In its traditional context, "joint and several" liability means that "[w]here multiple tortfeasors caused a single or indivisible injury, the injured party may either sue all tortfeasors jointly or he may sue any individual tortfeasor severally, and each individual tortfeasor is liable for the entire judgment."[22] MCR 1.109(E)(6) plainly does not provide that all attorneys who represented a client during any portion of a case in which an action or defense was frivolous must be held jointly and severally responsible for any sanctions that are eventually imposed. Rather, "[i]f a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon *the person who signed it, a represented party, or both, an appropriate sanction. . . .*"[23] The court rule is clear that only the attorney(s) who signed the frivolous document and/or the represented

---

MCR 1.109(E)(7), those additional sanctions are based on the same sanctionable conduct required by MCL 600.2591.

[21] There are appreciable differences between sanctions imposed under MCR 1.109(E)(1) through (6) and sanctions imposed under MCL 600.2591 and, by extension, MCR 1.109(E)(7). For instance, a frivolous motion to disqualify a judge is subject to sanctions under MCR 1.109(E)(1) through (6) but not MCL 600.2591 and MCR 1.109(E)(7). See *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 76 n 6; 903 NW2d 197 (2017). On the other hand, MCR 1.109(E) is limited to *filed* frivolous documents and does not extend to conduct occurring, for example, during court proceedings or before a referee, and it does not extend to an improper refusal to provide discovery. See *Keinz v Keinz*, 290 Mich App 137, 142-143; 799 NW2d 576 (2010). This is notable because in this case, the trial court believed that Powers's obfuscation during multiple hearings was intended to delay the proceedings.

[22] *Velez v Tuma*, 492 Mich 1, 13; 821 NW2d 432 (2012) (cleaned up).

[23] MCR 1.109(E)(6) (emphasis added).

23

party may be held *jointly responsible* for the sanction imposed. The court rule does not require the attorney who signed the frivolous document to be held *jointly responsible* with the represented party for the sanction imposed. Rather, the court rule permits the trial court discretion to impose *an appropriate sanction*, under which a court *may* hold the attorney signing the frivolous document jointly responsible with the represented party for the sanctions imposed.

In this case, it is very clear that Powers did not sign the frivolous documents underpinning the trial court's decision to order sanctions. Plaintiffs' motion for sanctions identifies the relevant frivolous filings as defendant's answer to the complaint and subsequent court filings claiming that defendant was not competent to contract and those filings claiming that plaintiffs unduly influenced or coerced defendant into contracting with plaintiffs. Since Powers did not sign or file any of these frivolous documents, the trial court committed clear error by holding him responsible for the sanctions it awarded plaintiffs under MCR 1.109(E)(6).

MCL 600.2591, and by extension MCR 1.109(E)(7),[24] provide broader language that is not explicitly limited to those who sign a pleading and therefore potentially provide a broader basis for sanctions than the filing of frivolous documents. For instance, sanctions might be imposed under those provisions for frivolous arguments or misrepresentations during a court proceeding. Moreover, these provisions are more amenable to an interpretation that would permit an order sanctioning every attorney who represented a client *during any portion of a case in which pleadings are frivolous*. But regardless, the

---

[24] See note 20.

language of MCL 600.2591 is not so broad as to permit a sanction akin to the trial court's order in this case that holds all attorneys who represented a client during any portion of the case jointly and severally responsible for the sanction imposed. MCL 600.2591 simply does not require, in any instance, that attorneys *must* be held *jointly and severally responsible* for sanctions imposed by a trial court.[25]

MCL 600.2591 provides that "if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." The statute clearly envisions that sanctions be awarded against "the nonprevailing party and their attorney," but the statute does not require that *all* attorneys of record must be sanctioned, especially when the attorney at issue was not retained when the frivolous "action or defense" was presented or advanced.

The Court of Appeals decision in *In re Costs & Attorney Fees*,[26] is illuminating. There, the appellants argued "that one frivolous defense cannot be sanctioned if other, reasonable defenses are asserted . . . ."[27] In rejecting this argument, the panel explained that

> MCR 2.111(F)(1) specifically indicates that a "pleader may assert as many defenses, legal or equitable or both, as the pleader has against an opposing

---

[25] We need not decide in this case whether sanctioned attorneys may be held severally responsible or whether, as Powers suggests, sanctions should be apportioned based on each wrongdoer's percentage of fault.

[26] *In re Costs & Attorney Fees*, 250 Mich App 89; 645 NW2d 697 (2002).

[27] *Id*. at 103.

party." That a party may assert more than one defense is thus well established. The Legislature chose to make *a* frivolous defense sanctionable. The use of "a" instead of "the" supports the conclusion that the statute, as well as the court rule, does not require that the entire defense or all the asserted defenses be found frivolous in order for sanctions to issue. Rather, sanctions may issue if any defense is frivolous.[28]

The statute plainly contemplates that more than one frivolous defense may be presented during a civil action. Had the statute instead referred to "the" defense to a civil action, perhaps all attorneys could be sanctioned regardless of their participation. Because the statute contemplates sanctions relating to a particular defense, it follows that sanctions may only be sought against counsel asserting that *specific* frivolous defense. This interpretation is also supported by caselaw explaining that "[t]o determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made."[29] Notably, the focus of the frivolousness inquiry under the statute is centered on "the claims or defenses at issue *at the time they were made*."[30] And "[t]hat factual determination largely depends on the particular facts and circumstances of the claim involved."[31] This fits well within the text of the statute, which focuses on the frivolousness of the civil action or defense asserted and the success or failure of the party in asserting them. The language is directed toward the claims and

---

[28] *Id.*

[29] *Id.* at 94.

[30] *Id.* (emphasis added). See also *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002) (noting that the arguments before the circuit court were not as "refined" as they were on appeal, but those initial arguments were nonetheless "sufficient to avoid sanctions").

[31] *Dillon v DeNooyer Chevrolet Geo*, 217 Mich App 163, 169; 550 NW2d 846 (1996).

arguments underlying the frivolous "civil action or defense," not all actions and circumstances related to the case at all proceedings. Thus, there is no statutory basis for the assertion that all attorneys representing the sanctioned party must themselves be sanctioned, even if an attorney did not assist with or promote the frivolous defense.

This makes abundant sense in the larger procedural context of sanctions and attorney conduct. Attorneys, as officers of the court, have an ethical responsibility to oversee and regulate legal arguments advanced by their clients. They have the ability and the duty to take steps to avoid the imposition of unnecessary costs on the opposing party and the court system at large.[32] Thus, imposing sanctions on the responsible attorneys, as opposed to solely on the client, helps to ensure that the opposing party is compensated for the unjustified costs they were required to bear. If clients alone are held liable, parties will often be left without relief, even though attorneys are just as, if not more, culpable than their clients for frivolous claims. The system also prevents clients, who are often not legally trained, from bearing the full burden of court sanctions.

---

[32] *Johnson v DiGiovanni*, 347 Mich 118, 127; 78 NW2d 560 (1956) ("From time immemorial attorneys-at-law have been recognized as officers of the court . . . ."); *In re Snyder*, 472 US 634, 644-645; 105 S Ct 2874; 86 L Ed 2d 504 (1985) ("Admission creates a license not only to advise and counsel clients but also to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms. The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice."); MRPC 3.1 (requiring the presentment of meritorious claims or contentions); see also 20 Am Jur 2d, Costs (May 2024 update), § 28 (explaining that attorney fees are awarded against attorneys at times "to encourage lawyers to conduct themselves in such manner as will not frustrate or delay the effective administration of justice").

Notably, none of those central aspects of attorney liability is implicated in the instance in which an attorney is retained at a different stage of the proceedings and had no influence on the nature and manner of legal arguments. The attorney in that instance had no control or oversight of the arguments in order to restrain frivolous proceedings and costs. Further, the opposing party would generally have the opportunity and ability to collect against the attorney that advanced the frivolous claim or defense. Similarly, the statute allows the sanctioned client to distribute the financial burden of the sanctions to their attorneys, rather than bear that burden alone.

Moreover, the opposite position would seriously undermine the effective administration of law as maintained under the clear text of MCL 600.2591. Instead of facilitating forthright and honest litigation, attorneys would be materially discouraged from taking on a client who has been found to have made a frivolous claim or defense during a prior stage of the proceedings, lest that attorney also be made liable for frivolous conduct in which they played no part. Every litigant has an interest in obtaining competent counsel to defend their positions, and litigants would very much benefit from such competence when defending against a motion for sanctions or to replace a prior attorney who engaged in sanctionable behavior. The trial court's decision to impose joint and several liability on all attorneys who represented the sanctioned client, even if the attorney took the case after the sanctionable conduct ceased, could result in those litigants who are most in need of competent counsel to proceed pro se or hire even less capable counsel.

In this case, the trial court granted plaintiffs' motion for sanctions because the pleadings asserted by defendant were frivolous under MCR 1.109(E)(7) and MCL 600.2591(1). Powers was hired to litigate the amount of costs and fees assessed by the trial

28

court for frivolous defenses and counterclaims that were brought by attorneys prior to Powers's appearance in the case. Powers never pleaded that defendant was incompetent to enter a contract or that plaintiffs defrauded defendant or coerced her to sign a contract. In fact, he expressly disavowed any intention of doing so in advance of his argument.[33]

Plaintiffs argue that the trial court was within its discretionary authority to hold Powers jointly and severally liable for his predecessors' misconduct because Powers himself engaged in frivolous litigation. But whether Powers's representation rose to the level of being independently sanctionable is beside the point. While Powers's conduct during his limited role in several hearings may well have justified the trial court's scrutiny of his representation, no motion for sanctions was filed against him for his distinct conduct, and none of this conduct related to the defenses or counterclaims that the court found frivolous and for which the trial court imposed sanctions. Because Powers had not filed a frivolous document and no motion for sanctions was brought against him, the court committed an error of law by sua sponte holding him jointly and severally responsible for the sanctions imposed. The trial court's belief that it was required to impose sanctions on Powers because he was an attorney of record for defendant, despite that Powers neither participated in the relevant sanctionable conduct nor represented defendant when the frivolous defenses were advanced, was not supported by MCR 1.109(E) and MCL 600.2591.

---

[33] As previously indicated, Powers informed the trial court that he had "a number of substantive arguments that may appear on their face to go to the . . . merits and not necessarily attorney's fees. . . . So . . . in making those questions to Mr. Fink, the Court might take that as only going to the merits of the case in substance but I'm really not."

Accordingly, we reverse the Court of Appeals decision affirming the trial court's decision to hold Powers jointly and severally liable for the sanctions it imposed and remand to the trial court for further proceedings consistent with this opinion.

Brian K. Zahra
Elizabeth T. Clement
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

STATE OF MICHIGAN

SUPREME COURT

ERIC BRADLEY and JACQUELINE
CHUANG,

        Plaintiffs-Appellees,

v                                     No. 164900

LINDA FRYE-CHAIKEN,

        Defendant,

and

BARRY POWERS,

        Appellant.

_____

ERIC BRADLEY and JACQUELINE
CHUANG,

        Plaintiffs-Appellees,

v                                     No. 164901

LINDA FRYE-CHAIKEN,

        Defendant-Appellant,

and

BARRY POWERS,

        Appellant.

_____

VIVIANO, J. (*dissenting*).

I agree with the majority that, as a general rule, an attorney should not be sanctioned for conduct that occurred prior to the attorney's involvement in a case. However, if the subsequently retained attorney continues to advance arguments or positions that were previously found to be frivolous, I believe the trial court has discretion to make the new attorney jointly and severally responsible for the sanctions. See *John J Fannon Co v Fannon Prod, LLC*, 269 Mich App 162, 172-173; 712 NW2d 731 (2005) (holding that the trial court did not abuse its discretion by imposing joint and several liability on the plaintiff and all of its attorneys, including the attorney who initially filed and pursued the action and the successor attorney and his firm, for pursuing a frivolous action). And where, as here, an attorney engages in dilatory tactics that obstruct the trial court's ability to determine the amount of sanctions to be imposed, I believe the trial court has discretion to hold the attorney jointly and severally responsible for the sanctionable conduct of his predecessors.[1]

I do not agree with the majority that a new motion for sanctions must be filed in these circumstances or that we should adopt a categorical rule that efforts to delay resolution of a sanctions motion by a subsequent attorney bear no relationship to the underlying frivolous pleadings. Instead, I would leave it to the sound discretion of the trial court to determine whether a new attorney's dilatory tactics were sufficiently egregious to be considered a continuation of the frivolous conduct and therefore sufficiently related to

---

[1] The trial court found that "Powers'[s] requests for adjournments were 'ridiculous' and 'another dilatory delay tactic.'" *Bradley v Frye-Chaiken*, unpublished per curiam opinion of the Court of Appeals, issued July 14, 2022 (Docket Nos. 356193 and 356194), p 7. In addition, as the Court of Appeals observed, "Powers also attempted to relitigate issues previously adjudicated," and "the trial court concluded the evidentiary hearing because Powers failed to follow the court's directions." *Id.*

2

the subject matter of the unresolved motion for sanctions. In short, although it might be more equitable to hold a successor attorney responsible only for the added costs and attorney fees occasioned by his or her dilatory conduct, I would allow the trial courts to make this determination based on the facts and circumstances of each case.

In this case, I agree with the Court of Appeals that the trial court's decision to hold Powers jointly and severally responsible for the sanctions imposed did not fall outside the range of reasonable and principled outcomes. For these reasons, I respectfully dissent.

David F. Viviano